United States District Court
Southern District of Texas
**ENTERED**
March 27, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | | |
|---|---|---|
| **FERMIN LOPEZ MONCEBAIS,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 5:26-CV-268** |
| | § | |
| **PAMELA BONDI, ET AL.,** | § | |
| **Respondents.** | § | |

## MEMORANDUM OPINION AND ORDER

Petitioner is currently detained in federal custody at the Rio Grande Processing Center in Texas. Before the Court is Petitioner's Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241, (Dkt. No. 1), and Respondents' Motion for Summary Judgment, (Dkt. No. 6).

The Court finds that Petitioner's deprivation of liberty without constitutionally adequate procedures is a violation of his due process rights, and the failure to provide due process warrants his release. For the reasons stated below, Petitioner's Petition for Writ of Habeas Corpus is granted in part. Respondents are ordered to release Petitioner **by March 30, 2026, at 12:00 p.m.** The parties are ordered to notify the Court of the status of Petitioner's release **by March 30, 2026, at 12:00 p.m.**

## I. BACKGROUND

### A. Factual Background

Petitioner, a citizen of El Salvador, challenges his ongoing detention without a bond hearing. According to the petition, Petitioner first entered the United States without inspection in 1994 and has remained continuously present in the country since then. (Dkt. No. 1 at 10).[1] Petitioner has worked regularly in the construction industry in Texas. (*Id.*). His mother is a Lawful Permanent Resident and his four children, aged

[1] When citing to the page numbers of any document in the record, the Court will cite to the page numbering of the Court's internal CM/ECF docket system, and not to the page numbers in the underlying documents.

twenty-four, twenty-one, twelve, and eleven, are United States citizens. (*Id.*). Petitioner claims that "[a]s the patriarch of his family, he is the central source of information and organization." (*Id.* at 11). Petitioner asserts that he has no criminal history, and Respondents do not challenge this representation. (*See id.* at 6; Dkt. No. 6)

Petitioner was detained by immigration officials on January 30, 2026, while crossing through a Customs and Border Protection checkpoint. (*Id.* at 10). He claims that he has no criminal history. (*Id.*). After he was detained, Petitioner was served a Notice to Appear, alleging that he is "an alien present in the United States who has not been admitted or paroled." (Dkt. No. 6-1 at 1). Petitioner has not received a bond hearing. (Dkt. No. 1 at 10).[2] He alleges that he has experienced hardship in defending his removal while detained because his detention has impeded his ability to collect evidence and coordinate with his counsel. (*Id.* at 11).

**B. Legal Background**

The Department of Homeland Security (DHS) and Department of Justice (DOJ) released interim guidance in July 2025, announcing a new legal position on detention authorities for noncitizens. The guidance interpreted the mandatory detention provision of Section 235 of the Immigration and Nationality Act (INA), or 8 U.S.C. § 1225, as applying to the detention of all "applicants for admission," including all noncitizens who have not been admitted, whether they arrive at a port of entry or enter without inspection. This position was adopted by the Board of Immigration Appeals (BIA) in September 2025. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).

In the months following the shift in policy, federal district courts across the country found the Government's interpretation at odds with the text of the statute and ordered bond hearings, or release, for noncitizens subject to mandatory detention under the policy. *See, e.g.*, *Barco Mercado v. Francis*, No. 25-CV-6582, 2025 WL 3295903, at *4, n.22 (S.D.N.Y. Nov. 26, 2025) (collecting cases). In February 2026, the Fifth Circuit accepted the Government's interpretation and found that Section 1225(b)(2) applies to all applicants for admission, regardless of whether they are actively "seeking admission"

[2] Respondents have not contested the facts Petitioner provides, and the evidence Respondents attach to their motion supports the factual basis of the petition. (Dkt. No. 6 at 2; Dkt. No. 6-1).

when they are detained. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (5th Cir. 2026).

**C. Procedural Background**

Petitioner filed the instant petition for a writ of habeas corpus, maintaining that he is entitled to release from detention. He brings several claims for relief: violation of the Due Process Clause of the Fifth Amendment, violation of the INA, violation of the Administrative Procedure Act (APA), and violation of the Suspension Clause.[3] Petitioner's due process claim is that Respondents have deprived him of his liberty interest to be free from detention without due process of law in violation of the Fifth Amendment. (Dkt. No. 1 at 21). He argues that he has a strong interest in liberty because he has lived in the United States for over three decades, and that his detention without justification violates his rights. (*Id.* at 21–22). Petitioner requests, among other things, that this Court issue an order requiring Respondents to release him or, alternatively, to hold a bond hearing. (*Id.* at 27–28).

## II. LEGAL STANDARDS

**A. 28 U.S.C. § 2241**

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law. 28 U.S.C. § 2241. Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003); *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005).

**B. The Fifth Amendment Due Process Clause**

The Fifth Amendment provides that "[n]o person shall . . . be deprived of life,

[3] Referred to as the Suspension Clause, Article I, Section 9, Clause 2 of the Constitution provides that: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." In the modern judicial system, "the Suspension Clause is designed to protect against these cyclical abuses. The Clause protects the rights of the detained by a means consistent with the essential design of the Constitution. It ensures that, except during periods of formal suspension, the Judiciary will have a time-tested device, the writ, to maintain the 'delicate balance of governance' that is itself the surest safeguard of liberty." *Boumediene v. Bush*, 553 U.S. 723, 745 (2008) (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 536 (2004) (plurality opinion)).

liberty, or property, without due process of law . . . ." U.S. Const. amend. V. Liberty interests "may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' . . . or [they] may arise from an expectation or interest created by [ ] laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (discussing liberty interests protected by the Fourteenth Amendment's due process clause); *see also Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 238 (5th Cir. 2022) ("Because the Due Process Clauses use the same language and guarantee individual liberty in the same way, it makes sense that the standards developed in the Fourteenth Amendment context must govern under the Fifth Amendment.").

**C. 8 U.S.C. Sections 1226 and 1225**

Section 1226 provides the general process for arresting and detaining noncitizens who are present in the United States and eligible for removal. 8 U.S.C. § 1226. The Supreme Court has explained that Section 1226(a) "sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be removed from the United States.'" *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (quoting § 1226(a)). "[T]he Attorney General may release an alien detained under § 1226(a) on bond or conditional parole." *Jennings*, 583 U.S. at 288 (citation modified). But "aliens who are covered by § 1225(b)(2) are detained pursuant to a different process" and "'shall be detained for a [removal] proceeding' if an immigration officer 'determines that [they are] not clearly and beyond a doubt entitled to be admitted' into the country." *Id.* (quoting § 1225(b)(2)(A)). Hence, "noncitizens detained under Section 1225(b)(2) must remain in custody for the duration of their removal proceedings, while those detained under Section 1226(a) are entitled to a bond hearing before an [Immigration Judge (IJ)] at any time before entry of a final removal order." *See Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1247 (W.D. Wash. 2025).

**D. Rule 56 Motion for Summary Judgment**

A "court shall grant summary judgment if the movant shows that there is no genuine dispute of any material fact, and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must consider the record as a whole to determine whether a genuine dispute exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317,

322–23 (1986). However, the Court must view the facts in the light most favorable to the non-moving party. *Valderas v. City of Lubbock*, 937 F.3d 384, 389 (5th Cir. 2019).

## III. DISCUSSION

Respondents move for summary judgment, asserting that Petitioner is subject to mandatory detention pursuant to *Buenrostro* and that his detention does not violate procedural or substantive due process. Respondents also contend that Petitioner is not entitled to relief under the APA or Suspension Clause. The Court principally addresses Petitioner's due process claim and finds that his detention violates due process.[4]

### A. *Buenrostro* Does Not Require Denial of the Petition

Respondents argue that "[t]he *Buenrostro* decision is binding precedent and requires that the Court deny this habeas petition." (Dkt. No. 6 at 5). The Court recognizes that *Buenrostro* instructs that Petitioner's mandatory detention as an applicant for admission does not violate the INA and resolves the statutory interpretation issue in this circuit. While *Buenrostro* binds the Court and overrules the Court's prior interpretation of Section 1225, it did not address the validity of due process claims such as those raised by Petitioner in this case. *See, e.g.*, *Bonilla Chicas v. Warden*, No. 5:26-CV-131, 2026 WL 539475, at *4–5 (S.D. Tex. Feb. 20, 2026); *see also Padron Covarrubias v. Vergara*, No. 5:25-CV-112, 2025 WL 2950097 (S.D. Tex. Oct. 8, 2025), *overruled by Buenrostro-Mendez*, 166 F.4th 494 (explaining the Court's prior statutory interpretation of Section 1225).

*Buenrostro*'s review was limited to questions of statutory interpretation and not due process. 166 F.4th at 498, 502 (beginning the opinion with "[t]he statutory interpretation issue" and finding that "[t]he statute unambiguously provides for mandatory detention"). Since this holding does not reach the constitutionality of the statute, it does not foreclose Petitioner's claims that he is unlawfully detained in violation of due process. Whereas the Court previously considered whether a petitioner's detention conformed with the governing statute, the Court now considers whether this Petitioner's detention conforms with the Constitution and its due process guarantees.

For this reason, the Court considers Petitioner's due process claim as an

---

[4] Because the Court grants Petitioner's requested relief without consideration of his other claims, the Court will decline to address the merits of those claims.

independent legal challenge to his mandatory detention without a bond hearing and whether that detention under Section 1225 conforms with the Fifth Amendment Due Process Clause.[5]

**B. Petitioner's Detention Violates Procedural Due Process**

Petitioner challenges his mandatory detention without a bond hearing. He asserts that his ongoing detention is a deprivation of a protected liberty interest that has not been justified by a determination that he should be detained. Respondents argue that his mandatory detention does not violate procedural due process. First, they argue that any challenge to the mandatory detention provision is inherently substantive instead of procedural. Second, they argue that, even if plausible, a procedural due process claim would fail here because the Supreme Court denied a challenge to mandatory detention in *Demore v. Kim*, and procedural due process only extends so far as a statute allows. 538 U.S. 510 (2003). Finally, they argue that the *Mathews v. Eldridge* factors are inapplicable. 424 U.S. 319 (1976).

At bottom, the Court must consider whether mandatory detention under 8 U.S.C. § 1225(b)(2) violates procedural due process as it applies to Petitioner. First, the Court must determine whether Petitioner has a liberty interest that triggers procedural due process and then whether that interest is foreclosed by Supreme Court precedent. Next, if the Court finds that there is a protected liberty interest at stake, the Court must determine whether Petitioner's detention violates his rights under the Fifth Amendment Due Process Clause after applying the *Mathews v. Eldridge* factors. The Court concludes for the reasons explained below that the mandatory detention of Petitioner, without any individualized determination, is a deprivation of liberty that must be safeguarded with adequate procedures.[6]

*1. Petitioner May Challenge His Detention Using Procedural Due Process*

The Fifth Amendment provides that "[n]o *person* shall . . . be deprived of life,

---

[5] Other district courts bound by *Buenrostro* have reached the same conclusion and considered due process claims. *Bonilla Chicas*, No. 5:26-CV-131, 2026 WL 539475, at *5; *Alvarez-Rico v. Noem*, No. 4:26-CV-729, 2026 WL 522322, at *2 n.2 (S.D. Tex. Feb. 25, 2026); *Marceau v. Noem*, No. EP-26-CV-237, 2026 WL 368953, at *2 (W.D. Tex. Feb. 9, 2026); *Hassan v. Noem*, No. EP-26-CV-48, 2026 WL 446506, at *2 n.1 (W.D. Tex. Feb. 9, 2026).

[6] The Court's review of district court opinions in the Fifth Circuit addressing this issue post-*Buenrostro* shows that courts have reached different conclusions on due process claims. Some courts'

liberty, or property, without due process of law . . . ." U.S. Const. amend. V (emphasis added). This guarantee extends to every person in the United States, regardless of their immigration status. *Zadvydas*, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *see also A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) (explaining that due process protections apply to noncitizens). Due process includes both procedural and substantive rights. Procedural due process promotes fairness in government decisions "[b]y requiring the government to follow appropriate procedures when its agents decide to 'deprive any person of life, liberty or property." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). Substantive due process "bar[s] certain government actions regardless of the fairness of the procedures used to implement them." *Id.*

Respondents argue that Petitioner's as-applied constitutional challenge cannot be brought as a procedural due process claim because the statute governing his detention does not entitle Petitioner to any procedures at all. Respondents rely on *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1 (2003), and a string of similar cases. (Dkt. No. 6 at 5–7) (citing *Reno v. Flores*, 507 U.S. 292, 308 (1993); *Michael H. v. Gerald D.*, 491 U.S. 110, 119–21 (1989); *Duarte v. City of Lewisville*, 858 F.3d 348 (5th Cir. 2017)).

However, the rights and statutes involved in most of these cases are distinguishable from the instant procedural due process challenge. *Doe*, 538 U.S. 1 (permitting state regulation of the procedures to which convicted sex offenders are entitled in the sex-offender registration process); *Michael H.*, 491 U.S. 110 (rejecting a procedural due process challenge to state law terminating a liberty interest in a parent's relationship with their child); *Duarte*, 858 F.3d 348 (applying *Doe* in finding that state

---

conclusions align with this Court's to the extent that the courts grant relief on procedural due process claims. *Bonilla Chicas*, No. 5:26-CV-131, 2026 WL 539475; *Alvarez-Rico*, No. 4:26-CV-729, 2026 WL 522322; *Marceau v. Noem*, No. EP-26-CV-237, 2026 WL 368953; *Hassan v. Noem*, No. EP-26-CV-48, 2026 WL 446506; *Betancourth v. Tate*, No. 4:26-CV-1169, 2026 WL 638482 (S.D. Tex. Mar. 6, 2026); *Delgado Rodriguez v. Tate*, No. 4:26-650, 2026 WL 517983 (S.D. Tex. Feb. 25, 2026); *Reynoso Ochoa v. Vergara*, No. 1:26-CV-266, 2026 WL 482211 (W.D. Tex. Feb. 20, 2026).

Other courts have found that the Supreme Court has foreclosed due process challenges to mandatory detention. *See, e.g.*, *Resendiz v. Noem*, No. 4:25-CV-5940, 2026 WL 445497 (S.D. Tex. Feb. 17, 2026); *Mouzgui v. Noem*, No. 4:26-CV-996, 2026 WL 607993 (S.D. Tex. Mar. 4, 2026). While the Court considered each of these opinions as persuasive authority, it respectfully disagrees with the courts reaching a contrary conclusion.

laws regulating where convicted sex offender can live do not trigger procedural due process).

And in the fourth case, *Reno v. Flores*, Respondents' alteration of the quote overextends the Court's meaning. Respondents imply that the Supreme Court there denied the procedural due process claim because it essentially was a substantive due process claim; and in fact, it's what they attempt to argue here. (Dkt. No. 6 at 6 (quoting *Flores*, 507 U.S. at 308)). However, the Court stated in full: "This is just *the* 'substantive due process' argument recast in 'procedural due process' terms, and we reject it for the same reasons." *Flores*, 507 U.S. at 308 (emphasis added).[7] The Court's conclusion was narrower and not as general as Respondents contend. Because the Court had already denied the substantive due process claim, it relied on the same reasons to deny the procedural due process claim. The Court did not proclaim generally that this type of challenge is necessarily a substantive due process claim.

The distinction between these cases relied on by Respondents and the instant challenge fatally undermines Respondents' arguments. The challenge here is not one to determine the extent to which states can infringe somewhat attenuated liberty interests of convicted sex offenders who "ha[ve] already had [ ] procedurally safeguarded opportunit[ies] to contest [their convictions]," including liberty interests like where they may live and whether or not they will be registered on a sex-offender registry for their predicate conviction. *Duarte*, 858 F.3d at 352. The challenge here is to mandatory detention of all noncitizens charged as inadmissible to the United States, regardless of their flight risk, danger to society, or length of time residing in the United States free from detention.[8] The denial of the right to a hearing on the deprivation of a noncitizen's

[7] Respondents quoted *Flores* parenthetically with this alteration: "holding that a challenge to a regulation on the ground that it failed to require a determination of a detainee's 'interests' was 'just [a] "substantive due process" argument recast in "procedural due process" terms.'" (Dkt. No. 6 at 6).

[8] Other district courts have found, and the Court similarly reasons, that constitutionally protected interests in liberty are strengthened as noncitizens establish lives in the United States, even without permission from the government to reside here. *See, e.g.*, *Zafra v. Noem*, No. EP-25-CV-541, 2025 WL 3239526, at *4 (W.D. Tex. Nov. 20, 2025) (collecting cases). The Due Process Clause "protects an individual's liberty interest which is viewed as including an individual's freedom to work and earn a living and to establish a home and position in one's community." *Martin v. Memorial Hosp. at Gulfport*, 130 F.3d 1143, 1148 (5th Cir. 1997) (quoting *Cabrol v. Town of Youngsville*, 106 F.3d 101 (5th Cir. 1997)). It follows that liberty interests in freedom from detention increase as other liberty interests, like the freedom to earn a living and establish a home, extend for years without a deprivation by the government.

liberty is occurring at the inception of removal proceedings, even before the noncitizen's removability is determined. Unlike in the contexts of the cases relied on by Respondents, this deprivation of liberty is occurring without "procedurally safeguarded opportunity" to contest their detention.[9] This context in which a liberty interest is being deprived distinguishes it from the cases relied on by Respondents. Accordingly, the Court concludes that Respondents have failed to show that a procedural due process challenge is foreclosed.[10]

*2. Supreme Court Precedent Does Not Foreclose a Due Process Challenge*

Respondents next argue, and other district courts have found, that procedural due process claims like Petitioner's are unavailing in this context. (Dkt. No. 6 at 7–8) (citing *Avila v. Tate*, 4:25-CV-05919, slip op. (S.D. Tex. Feb. 13, 2026); *Giron v. Noem*, No. 4:26-CV-00086, 2026 WL 252370 (S.D. Tex. Jan. 28, 2026); *Jimenez v. Bradford*, No. 4:25-CV-05853, slip op. (S.D. Tex. Feb. 10, 2026); *Zuniga v. Lyons*, No. 1:25-CV-00221, 2025 WL 3755126 (N.D. Tex. Dec. 29, 2025)). After evaluating these arguments, the Court

---

[9] Part of a procedurally safeguarded opportunity is a neutral arbiter. *See Megill v. Bd. of Regents of State of Fla.*, 541 F.2d 1073, 1079 (5th Cir. 1976) ("An impartial decisionmaker is a basic constituent of minimum due process."), The predicate finding for mandatory detention under 8 U.S.C. § 1225(b)(2) is an immigration officer's determination that "an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." § 1225(b)(2). An individual officer's determination is more similar to the screening process for enemy combatants in *Hamdi* than it is to a review of detention by a neutral and detached magistrate. *See* 542 U.S. at 538. In *Hamdi*, the government provided a citizen accused of being an enemy combatant with an "unspecified 'screening' process" and military interrogations to determine whether he was properly classified as an enemy combatant. *Id.* at 537–38. The Supreme Court's plurality noted that "[a]n interrogation by one's captor, however effective an intelligence-gathering tool, hardly constitutes a constitutionally adequate factfinding before a neutral decisionmaker." *Id.* at 537. The Court ultimately concluded that this process was insufficient under the Due Process Clause. *Id.* at 538.

While the facts of *Hamdi* are distinguishable from the present case because Hamdi was a citizen and he was being detained in the enemy combatant context, the Court's reasoning there supports the Court's concern here that the agency determination that Petitioner received was likely not one made by a neutral decisionmaker, which raises skepticism as to whether the process provided here would conform with due process. *See id.* at 538 (quoting *Concrete Pipe & Products of Cal. v. Constr. Laborers Pension Tr. for S. Cal.,* 508 U.S. 602, 617–18 (1993)) ("[O]ne is entitled as a matter of due process of law to an adjudicator who is not in a situation which would offer a possible temptation to the average man as a judge . . . which might lead him not to hold the balance nice, clear and true.").

[10] Other district courts have similarly disposed of Respondents' arguments and reliance on this line of Supreme Court cases for this proposition. *Betancourth*, No. 4:26-CV-1169, 2026 WL 638482, at *2; *Zelaya Ventura v. Vergara*, No. 5:26-CV-142, slip op. at 2–4 (S.D. Tex. Mar. 2, 2026); *Noyola v. Bondi*, No. 1:26-CV-405, 2026 WL 607266, at *3 (W.D. Tex. Mar. 4, 2026); *Gomez Hernandez v. ICE Field Off. Dir.*, No. EP-26-CV-67, 2026 WL 503958, at *2 (W.D. Tex. Feb. 23, 2026). The Court finds these cases persuasive and reaches the same conclusion.

respectfully disagrees.

These arguments rely on two Supreme Court cases: *Demore v. Kim* and *Department of Homeland Security v. Thuraissigiam*. In *Demore*, the Supreme Court rejected a constitutional challenge to mandatory detention of noncitizens with certain criminal convictions under 8 U.S.C. § 1226(c). 538 U.S. at 517–18. In considering a line of caselaw authorizing mandatory detention of noncitizens in certain circumstances, the Court found that the mandatory detention of "a criminal alien who has conceded that he is deportable," is constitutionally permissible and falls in line with these cases. *Id.* at 531 (citing *Wong Wing v. United States*, 163 U.S. 228 (1896); *Carlson v. Landon*, 342 U.S. 524 (1952); *Flores*, 507 U.S. 292)). The Court there ultimately denied the due process challenge to the Section 1226(c),[11] finding that "[s]uch detention necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *Demore*, 538 U.S. at 527–28 (referencing "criminal alien[s]" twenty-eight times in the majority opinion).[12]

Here, *Demore* is cited for the broader proposition that "[d]etention during removal proceedings is a constitutionally permissible part of that process." 538 U.S. at 531. It is true that civil detention is authorized during removal proceedings when it "bears a reasonable relation to the purpose" of the detention. *See Zadvydas*, 533 U.S. at 690 (citation modified).

But the Court finds that *Demore* does not necessarily permit all conceivable mandatory detention policies for noncitizens, and it is instead much narrower. While detention itself may be constitutionally permissible, that is not to say that detention is unchecked by a noncitizen's entitlement to due process under the Fifth Amendment.

[11] Section 1226(c), titled Detention of Criminal Aliens, requires detention of inadmissible and deportable aliens who have committed certain criminal offenses identified in statute. 8 U.S.C. § 1226(c).

[12] Language in *Demore* highlights facts that are relevant to Court's analysis, much like the analysis of Respondents' reliance on *Doe* and *Duarte* above. Like in *Doe* and *Duarte*, Demore's convictions "were obtained following the full procedural protections our criminal justice system offers." 538 U.S. at 513. The Court weighs these cases in light of the fact that mandatory detention, or a lack of entitlement to procedural due process, was predicated on convictions where petitioners *were* entitled to procedural due process before their detention—though in a criminal context. Compare this to the predicate finding required for mandatory detention under 8 U.S.C. § 1225(b)(2): an immigration officer's determination that "an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." § 1225(b)(2)

*Demore* was narrowly focused on mandatory detention *as a result of criminal convictions*. *Demore* does not validate mandatory detention for all applicants for admission, even those like Petitioner who have no criminal record, and it should not preclude due process challenges for detainees under Section 1225(b)(2). For this reason, the Court finds that Petitioner's challenge is not presently foreclosed by *Demore* or this line of precedent.[13]

Next, Respondents argue that Petitioner's procedural due process rights only extend to rights "provided by statute" pursuant to *Thuraissigiam*. (Dkt. No. 6 at 8) (citing *Zuniga*, No. 1:25-CV-00221, 2025 WL 3755126, at *8). In *Thuraissigiam*, the Supreme Court held that a noncitizen who recently crossed the border without inspection lacked the constitutional due process right to review procedures that were not provided by statute. *Thuraissigiam*, 591 U.S. at 140. Crucially, two facts distinguish this holding from the present case. First, the opinion turns on the noncitizen's "attempt[ ] to enter the country illegally and [apprehension] just 25 yards from the border." *Id.* (explaining that "an alien who is detained shortly after unlawful entry cannot be said to have 'effected an entry'"). Second, the procedural due process sought concerned removal proceedings and a determination of removability as opposed to detention procedures and deprivation of liberty. *Id.*

These facts distinguish the case from the instant petition. Here, Petitioner entered without permission or inspection, but he was not apprehended upon his entry thirty-two years ago. Second, Petitioner squarely challenges his due process rights with respect to his detention, and he does not challenge his rights in immigration court for his removal proceedings. In addition to the factual distinctions, the Court notes that Petitioner's challenge is a constitutional due process one, and the statute under which he is detained must still comply with the Constitution. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) (citation modified) ("The right to due process 'is conferred, not by legislative grace, but by constitutional guarantee.'"). For these reasons, *Thuraissigiam*

[13] Other district courts presented with this argument have similarly found that *Demore* does not preclude a due process challenge to mandatory detention under 8 U.S.C. § 1225(b)(2). *See, e.g.*, *Bonilla Chicas*, No. 5:26-CV-131, 2026 WL 539475, at *7–9; *see also Zamudio Sanchez v. Noem*, No. EP-25-CV-403, 2026 WL 596133, at *10 n.104, *14 (W.D. Tex. Mar. 2, 2026) (comparing *Demore*, *Flores*, and *Carlson* and noting that "[t]here is little to suggest that Congress created a new category akin to criminals, children, or Communists" when it subjected applicants for admission to mandatory detention).

does not preclude Petitioner's due process challenge.[14]

Because neither of these arguments forecloses Petitioner's procedural due process challenge, the Court now evaluates Petitioner's claim.

*3. Petitioner Has a Liberty Interest in Freedom from Detention*

Within his procedural due process claim, Petitioner asserts that his ongoing detention is a deprivation of liberty that has not been justified by constitutionally adequate procedures. Respondents argue that the procedural due process analysis is inapt, which the Court addressed above. Aside from this argument, Respondents do not seem to contest that Petitioner has a liberty interest.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). Noncitizens are entitled to due process of the law under the Fifth Amendment. *See Trump v. J. G. G.*, 604 U.S. 670, 673 (2025); *Demore*, 538 U.S. at 523; *Zadvydas*, 533 U.S. at 693; *A.A.R.P. v. Trump*, 605 U.S. at 94; *Orellana v. Garland*, 117 F.4th 679, 689 (5th Cir. 2024). "[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (collecting cases). Though, "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 522.

Challenges to procedural due process proceed in two parts: first, there must be a deprivation of a protected interest in property or liberty, and second, there must be constitutionally inadequate procedures prior to that deprivation. *Meza v. Livingston*, 607 F.3d 392, 399 (5th Cir. 2010). Liberty interests "may arise from the Constitution itself,

---

[14] Other district courts to consider the issue have reached the same conclusion, and they find that these factual distinctions limit the scope of *Thuraissigiam* in cases like this one. *Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668, 681–82 (W.D. Tex. Sep. 22, 2025); *Noyola*, No. 1:26-CV-405, 2026 WL 607266, at *2; *Bonilla Chicas*, No. 5:26-CV-131, 2026 WL 539475, at *9–10; *Alvarez-Rico*, No. 4:26-CV-729, 2026 WL 522322, at *3–4; *see also Delgado Rodriguez v. Tate*, No. 4:26-650, 2026 WL 517983, at *2 n.1 (noting that "a challenge to detention, rather than to immigration proceedings, does not implicate the 'sovereign prerogative' on which *Thuraissigiam* relies").

Though, as Respondents assert, some courts have gone the other way on this issue. *See, e.g.*, *Zuniga*, No. 1:25-CV-00221, 2025 WL 3755126, at *8 (reasoning that applicants for admission are only entitled to rights established by Section 1225).

by reason of guarantees implicit in the word 'liberty,' . . . or [they] may arise from an expectation or interest created by [ ] laws or policies." *Wilkinson*, 545 U.S. at 221 (2005); *Douglass*, 46 F.4th at 238. Here, the Court finds that Petitioner clearly has a liberty interest at stake because he is subject to detention in civil confinement. Freedom from detention is implicit in the word liberty. By being detained after residing in the United States for over thirty years, Petitioner was deprived of his liberty upon his detention.

Because the Court finds that there is a deprivation of a liberty interest, it next determines whether constitutionally adequate procedures were used in connection with the deprivation.

*4. The* Mathews *Factors Weigh in Favor of Petitioner*

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). *Mathews* established a three-factor balancing test to determine whether procedures prior to a deprivation are constitutionally sufficient:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 334–35. The Court considers the application of these factors here.

First, Petitioner has constitutionally protected liberty interests at stake. As discussed above, Petitioner's interest in liberty is both strong and fundamental. Petitioner entered without inspection in 1994 as a teenager and has lived in the United States continuously for thirty-two years. While living here, he has worked steadily in the construction industry and claims to have centered his life on his family and community. He has no criminal history. His mother is a Lawful Permanent Resident, and his four children are United States citizens. Two of his children are still minors. Petitioner is the central source of information and organization in his family. While in detention, Petitioner has experienced hardship in defending his removal because his detention has impeded his ability to collect evidence and coordinate with his attorney. These facts all

support the finding that Petitioner has a strong liberty interest.[15] This factor weighs strongly in favor of Petitioner.

Second, the Court evaluates the risk of an erroneous deprivation of liberty through the procedures used. Petitioner argues that he "lacks any opportunity to contest the reasonableness of his detention, meaning the risk of erroneous deprivation lies in this 'automatic continued deprivation of liberty for a noncitizen.'" (Dkt. No. 1 at 16). Respondents argue that the risk of erroneous deprivation is impossible to calculate because there cannot be an erroneous deprivation given that the statute requires the deprivation of liberty.

The risk inquiry is best framed as whether the mandatory detention here risks a deprivation of liberty that is unjustified. *See Carey v. Piphus*, 435 U.S. 247, 259–60 (1978) (citation modified) (noting that procedural due process protections prevent "mistaken or unjustified deprivation of life, liberty, or property" and "[s]uch rules 'minimize substantively unfair or mistaken deprivations'"). Additionally, the balancing test asks the Court to consider the "probable value, if any, of additional or substitute safeguards." *Mathews*, 424 U.S. at 334–35. In analyzing the procedures that Petitioner received prior to or in connection with his deprivation, the Court finds that only one procedure was provided. The predicate finding required for mandatory detention under 8 U.S.C. § 1225(b)(2) is an immigration officer's determination that "an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." § 1225(b)(2). This means that Respondents determined that Petitioner must be detained because he could not prove, clearly and beyond a doubt, to an immigration officer that he was not entitled to be admitted at the time he was detained. The limited and unilateral procedure here creates a high risk of unjustified deprivation.[16] Generally, a custody redetermination, or bond

---

[15] As the Court discussed above, "[f]reedom from imprisonment . . . lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Beyond the liberty interest in freedom from detention, other liberty interests compound as noncitizens spend time living in the United States without a deprivation of that liberty, particularly when that freedom extends for years while the noncitizen has time to establish roots and connections in their community. *See, e.g.*, *Zafra*, No. EP-25-CV-541, 2025 WL 3239526, at *4; *see also supra* n.8 (reasoning that "liberty interests in freedom from detention increase as other liberty interests, like the freedom to earn a living and establish a home, extend for years without a deprivation by the government").

[16] The Court's concern here is increased by the unprecedented and broad applicability of 8 U.S.C. § 1225(b)(2). As the Supreme Court noted in a plurality opinion issued in the context of procedural due process claims for detained enemy combatants, "history and common sense teach us that an unchecked

hearing in immigration court, safeguards the liberty interests of noncitizen detainees. *See* § 1226(a). However, the procedures here under Section 1225(b)(2) create a high risk of erroneous deprivation because the statute applies to all applicants for admission without consideration of factors justifying detention or release.[17] This factor also weighs in favor of Petitioner.

Third, any burden imposed on the Government does not outweigh Petitioner's interests described above. The Government has a weighty interest in ensuring a noncitizen's appearance at their removal proceedings, removing deportable noncitizens, and enforcing immigration laws. However, those interests are not at odds with providing bond hearings to noncitizens or providing justification for detention, and there is no evidence in the record to believe that Petitioner would be a flight risk or danger. Petitioner has no record of committing any crime and has significant ties to his community after living in the United States for over three decades, including a history of regular employment and having four U.S. citizen children. While Section 1225(b)(2) does not provide that bond hearings may be given to applicants for admission, due process requires that their detention must be justified. *See Zadvydas*, 533 U.S. at 690. "[G]overnment detention violates [the Due Process Clause] unless the detention is ordered in . . . certain special and 'narrow' nonpunitive 'circumstances,' where a special justification . . . , outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Id.* (citation modified). Thus, Petitioner's interests in liberty and the risk he faces of an erroneous deprivation outweigh the Government interest.[18]

Having considered Petitioner's petition, Respondents' motion, and the law, the

---

system of detention carries the potential to become a means for oppression and abuse of others who do not present [a] sort of threat." *Hamdi*, 542 U.S. at 530.

[17] This is distinguishable from *Demore*. 538 U.S. 510 There the Supreme Court held that mandatory detention under Section 1226(c) was permissible, but that statute only applied to "a limited class of deportable aliens—including those convicted of an aggravated felony." *Id.* at 518. *Demore* essentially held that release on bond could be withheld from noncitizens convicted of a predicate criminal offense, which presumably correlates to a risk of flight and danger. *See id.* at 513, 520 (noting that Congress was "justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers"). No such evidence has been presented here with respect to applicants for admission.

[18] Despite minor factual distinctions, other district courts have applied similar logic in weighing the *Mathews* factors as they apply to applicants for admission detained under Section 1225(b)(2) following *Buenrostro*. *See Bonilla Chicas*, No. 5:26-CV-131, 2026 WL 539475, at *10–11; *Alvarez-Rico*, No. 4:26-CV-729, 2026 WL 522322, at *5–6; *Betancourth*, No. 4:26-CV-1169, 2026 WL 638482, at *3–5; *Delgado Rodriguez*, No. 4:26-650, 2026 WL 517983, at *3–4; *Reynoso Ochoa*, No. 1:26-CV-266, 2026 WL 482211, at

Court finds that the balance of the factors establishes that the Government violated Petitioner's due process rights when it deprived Petitioner of his liberty interest without due process of law. Even though Congress may make rules as to aliens that would be unacceptable if applied to citizens, *Demore*, 538 U.S. at 522, Petitioner's interest in liberty after living in the United States for thirty-two years—free from detention—triggers a liberty interest that makes his detention without any individualized determination unacceptable. As Respondents are not entitled to judgment as a matter of law, their motion for summary judgment is denied. Petitioner's petition for a writ of habeas corpus is granted as to his procedural due process claim.[19]

**C. Remedy**

A district court has equitable discretion in determining the appropriate remedy "as law and justice require" for unlawful detention in a habeas petition. *See Brown v. Davenport*, 596 U.S. 118, 127–28 (2022). The Court finds that the specific harm Petitioner suffered—unlawful deprivation of liberty without due process—is remedied by granting his immediate release, rather than ordering a bond hearing.[20] Therefore, the Court, exercising its equitable discretion in fashioning appropriate habeas relief, orders Respondents to release Petitioner from custody. *See Delgado Rodriguez*, No. 4:26-650, 2026 WL 517983, at *4 (quoting *Munaf v. Geren*, 553 U.S. 674, 693 (2008)) ("The remedy for unlawful detention 'is, of course, release.'"); *Reynoso Ochoa v. Vergara*, No. 1:26-CV-

---

*3; *Zamudio Sanchez*, No. EP-25-CV-403, 2026 WL 596133, at *12–14. The Court finds these cases persuasive and reaches a similar conclusion with respect to Petitioner and the facts of this case.

[19] As the Court notes above, it will decline to address the merits of Petitioner's other claims because it grants the relief he requests on this ground.

[20] The Court recognizes the weight of its decision to order Petitioner's release from custody. When the Court first began considering habeas petitions in the context of mandatory detention under Section 1225(b)(2), it ordered bond hearings as an adequate remedy for detention that it found to be unlawful. *See, e.g.*, *Padron Covarrubias*, No. 5:25-CV-112, 2025 WL 2950097, at *5. However, that relief was in part premised on the Court's finding that Section 1226(a) was more applicable to each petitioner's detention. Now, though, the Fifth Circuit has held that Section 1226(a) does not apply to any applicants for admission. *Buenrostro-Mendez*, 166 F.4th 494. The Court agrees with the determination that a hearing after Petitioner's unjustified deprivation of liberty does not cure the deprivation. *See Bonilla Chicas*, No. 5:26-CV-131, 2026 WL 539475, at *12. As such, the Court does not order a bond hearing.

Additionally, the Court finds that an IJ would be unlikely to hold the bond hearing if ordered because the Board of Immigration Appeals' position is that there is no jurisdiction to hold bond hearings for all applicants for admission detained under Section 1225(b)(2). *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025); *see also Rojas v. Noem*, No. EP-25-CV-443, 2025 WL 3038262, at *4, n.2 (taking judicial notice that at least one IJ "has apparently disclaimed jurisdiction to adjudicate bond hearings on the merits even when ordered to do so by a United States District Court").

266, 2026 WL 482211, at *4 (same).

Petitioner also requests attorney's fees and costs under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. However, the Fifth Circuit has held that fees under the EAJA are not authorized for Section 2241 habeas petitions because habeas proceedings are not purely civil actions. *Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023); *see also Puertas Mendoza v. Bondi*, No. 5:25-CV-1453, 2025 WL 3142089, at *5 (W.D. Tex. Oct. 22, 2025) (denying request for fees under the EAJA in immigration habeas corpus proceedings). Because this relief is not authorized by statute, Petitioner's request is **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241, (Dkt. No. 1), is **GRANTED in part and DENIED in part**, and Respondents' Motion for Summary Judgment, (Dkt. No. 6), is **DENIED**.

Respondents are **ORDERED** to **RELEASE** Petitioner from custody **by March 30, 2026, at 12:00 p.m.**, under reasonable conditions of release, and to submit a status report to the Court confirming Petitioner's release **by March 30, 2026, at 12:00 p.m.** Respondents must notify Petitioner's counsel of the exact time and location of Petitioner's release **no less than two hours** prior to Petitioner's release from custody.

If Petitioner is re-detained, Petitioner must be afforded procedural due process as guaranteed by the Due Process Clause of the Fifth Amendment.

By **April 10, 2026**, the parties shall **FILE** advisories with the Court indicating whether the parties oppose entry of a final judgment in this case.

It is so **ORDERED**.

**SIGNED** on March 27, 2026.

John A. Kazen
United States District Judge